1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LISA BAKER,                           No.  1:21-cv-01490-DAD-SKO

12                    Plaintiff,

13        v.                                ORDER DENYING PLAINIFF'S MOTION
                                            TO REMAND AND DENYING
14    NUTRIEN AG SOLUTIONS, INC., et al.,   DEFENDANTS' MOTION TO DISMISS

15                    Defendants.           (Doc. Nos. 14, 19)

16

17         This matter is before the court on the motion to dismiss pursuant to Federal Rule of Civil

18    Procedure 12(b)(6) filed by defendants on November 10, 2021, and the motion to remand this

19    action to the Merced County Superior Court filed by plaintiff on November 16, 2021.[1]  (Doc.

20    Nos. 14, 19.)  Pursuant to General Order No. 617 addressing the public health emergency posed

21    by the COVID-19 pandemic, both motions were taken under submission on the papers.  (Doc. No.

22    ─────────────────────
      [1] The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
23    overwhelming caseload has been well publicized and the long-standing lack of judicial resources
      in this district long-ago reached crisis proportion.  While that situation was partially addressed by
24    the U.S. Senate's confirmation of district judges for two of this court's vacancies on December
      17, 2021, and June 21, 2022, another vacancy on this court with only six authorized district judge
25    positions was created on April 17, 2022.  For over twenty-two months the undersigned was left
      presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants.
26    That situation resulted in the court not being able to issue orders in submitted civil matters within
      an acceptable period of time and continues even now as the undersigned works through the
27    predictable backlog.  This has been frustrating to the court, which fully realizes how incredibly
      frustrating it is to the parties and their counsel.
28
                                              1

1  18.)  For the reasons explained below, the court will deny plaintiff's motion to remand and deny

2  defendants' motion to dismiss.

3  **BACKGROUND**

4    Plaintiff filed her initial complaint in the Merced County Superior Court on August 24,

5  2021.  (Doc. No. 1 at 2.)  Therein, plaintiff asserted a single cause of action for negligence against

6  defendant Nutrien Ag Solutions, Inc. ("Nutrien").  (Doc. No. 1-2 at 8.)  Defendant Nutrien

7  removed the action to this federal court on October 6, 2021 based on diversity jurisdiction.  (Doc.

8  No. 1 at 2.)  On October 27, 2021, plaintiff filed her operative first amended complaint ("FAC")

9  in this action.  (Doc. No. 11.)  Therein, plaintiff asserts the same negligence claim, however she

10  now asserts that claim against both defendant Nutrien and newly-added defendant R. Daniel

11  Robinson, a Nutrien employee.  (*Id.* at 4.)  Plaintiff alleges as follows in her FAC.

12    Plaintiff is the owner of real property located at the intersection of East Harmon Road and

13  Highway 152 in El Nido, California.  (*Id.* at ¶ 6.)  In or around 2017, plaintiff planted

14  approximately ninety-eight acres of alfalfa crop on her property.  (*Id.*)  Throughout the following

15  years, plaintiff cultivated and harvested that alfalfa.  (*Id.*)  In or around September 2020,

16  defendant Robinson met with plaintiff at her property, where it was "obvious and apparent" that

17  alfalfa was being grown.  (*Id.* at ¶ 7.)  Robinson's purpose in visiting plaintiff's property was to

18  solicit plaintiff's business.  (*Id.*)  Robinson gave plaintiff his business card, which identified him

19  as a "Crop Advisor" employed by defendant Nutrien.  (*Id.*)  Before leaving plaintiff's property,

20  defendant Robinson told plaintiff to call him if plaintiff ever needed anything.  (*Id.*)

21    On October 5, 2020, defendant Robinson followed up with plaintiff by sending her a text

22  message stating that he had recently driven by plaintiff's property again and observed employees

23  working on the property.  (*Id.* at ¶ 8.)  Defendant Robinson also texted plaintiff the following:

24  "Let me know if you need anything, soil audits/post harvest amendments or advice, fert, seed,

25  fume, chemicals, ya da ya da ya da.. I do pretty much everything ha." (*Id.*)  Defendant

26  Robinson's representations to plaintiff led her to believe that he was a knowledgeable and

27  experienced crop advisor.  (*Id.* at ¶ 9.)  As a result of those representations and efforts to solicit

28  business, plaintiff began purchasing agricultural products from Nutrien through Robinson.  (*Id.*)

1    In or around February 2021, plaintiff consulted with Daniel Boyd—a licensed agricultural

2    pest control advisor—regarding plaintiff's alfalfa crop.  (*Id.* at ¶ 10.)  Boyd recommended that

3    plaintiff apply several products to her alfalfa crop, including fifteen gallons of "Butyrac 200."

4    (*Id.*)  Plaintiff subsequently contacted defendant Robinson and requested prices for various items,

5    including the Butyrac 200 that Boyd had recommended to her.  (*Id.* at ¶ 11.)  On February 19,

6    2021, plaintiff sent Robinson a text asking if he had price quotes for the items plaintiff had

7    requested.  (*Id.* at ¶ 12.)  Robinson responded to plaintiff's inquiry with the following:

8            Morning Lisa, still waiting on a price for Raptor
         **Saber (butyrate) $18.90/gal**
9            MSO/leci (slammer) $19.32/gal
         Li 700 (contain) $22.75/gal
10

11   (*Id.* at ¶ 12) (emphasis added).  Plaintiff responded to defendant Robinson's text with the

12   following message:

13           Hi Daniel [Robinson] here's my order
         Liquid ams 3 gal
14           **Butyrac 200 15 gal**
         Raptor 2.5 gal
15           Contain 1.5 gal

16   (*Id.*) (emphasis added).  Notably, plaintiff's text did not list Saber or butyrate in her order, though

17   she did include "Butyrac 200."  Nevertheless, in response to plaintiff's order, defendant Robinson

18   delivered fifteen gallons of Saber (butyrate) to plaintiff on February 24, 2021 instead of 15

19   gallons of Butyrac 200.  (*Id.* at ¶ 13.)  Based on defendant Robinson's representations, statements,

20   and text messages, plaintiff assumed that Saber (butyrate) and Butyrac 200 were interchangeable,

21   and that the Saber delivered to her by Robinson on behalf of Nutrien could thus be safely applied

22   to her alfalfa crop.  (*Id.* at ¶ 14.)  Plaintiff therefore applied the Saber chemicals to her alfalfa,

23   which resulted in the destruction of the entire crop shortly thereafter.  (*Id.* at ¶ 15.)

24   In or around March 2021, plaintiff met with Boyd, defendant Robinson, and plaintiff's

25   foreman.  (*Id.* at ¶ 16.)  During this meeting, Boyd inquired if the Butyrac 200 had been applied

26   to the alfalfa crop.  (*Id.*)  Plaintiff responded that she had ordered Butyrac 200 from Robinson, but

27   that Saber had been delivered instead.  (*Id.*)  During this exchange, defendant Robinson reviewed

28   /////

3

1    his prior invoices and text messages with plaintiff, realized that he had sent Saber instead of

2    Butyrac 200, and stated "Oh shit, I screwed up.  I sent you Saber instead of Butyrac."  (*Id.*)

3             On November 10, 2021, defendants filed the pending motion to dismiss plaintiff's

4    complaint, arguing that plaintiff's allegations are insufficient to state a cognizable negligence

5    claim against them.  (Doc. No. 14.)  On November 16, 2021, plaintiff filed her motion to remand

6    this action back to the Merced County Superior Court.  (Doc. No. 19.)  On December 6, 2021,

7    plaintiff filed her opposition to defendants' motion to dismiss, and on December 7, 2021,

8    defendants filed their opposition to plaintiff's motion to remand.  (Doc. Nos. 20, 21.)  On

9    December 13, 2021, plaintiff filed her reply in support of her motion to remand, and on December

10   14, 2021, defendants filed their reply in support of their motion to dismiss.  (Doc. Nos. 22, 23.)

11                                         **LEGAL STANDARD**

12   **A.       Motion to Remand**

13            "If at any time before final judgment it appears that the district court lacks subject matter

14   jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c); *see also Smith v. Mylan, Inc.*, 761

15   F.3d 1042, 1044 (9th Cir. 2014); *Bruns v. NCUA*, 122 F.3d 1251, 1257 (9th Cir. 1997).  "The

16   removal statute is strictly construed against removal jurisdiction, and the burden of establishing

17   federal jurisdiction falls to the party invoking the statute."  *California ex rel. Lockyer v. Dynegy,*

18   *Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (citation omitted); *see also Provincial Gov't of*

19   *Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the

20   burden of establishing that removal is proper.").  As such, a federal court must reject jurisdiction

21   and remand the case to state court if there is any doubt as to the right of removal.  *Matheson v.*

22   *Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see also Valdez v. Allstate*

23   *Ins. Co.*, 372 F.3d 1115, 1118 (9th Cir. 2004).  A defendant seeking removal of an action from

24   state court bears the burden of establishing grounds for federal jurisdiction by a preponderance of

25   the evidence.  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

26   **B.       Motion to Dismiss**

27            The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

28   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

                                                    4

1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

### A.  Plaintiff's Motion to Remand

In her pending motion to remand, plaintiff argues that although this court had diversity jurisdiction over this action at the time of removal, her subsequent addition of defendant Robinson in her FAC divests this court of diversity jurisdiction under 28 U.S.C. § 1332 because plaintiff and defendant Robinson are both citizens of California.  (Doc. No. 19–1 at 6.)

In their opposition to plaintiff's motion, defendants argue that the court should "scrutinize the propriety of Plaintiff's attempted diversity destroying amendment under 28 U.S.C. § 1447(e)," which provides that the court may deny joinder where a plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction.  (Doc. No. 21 at 5.)  Defendants assert that the court should deny joinder here because plaintiff has amended her complaint and added defendant Robinson solely based on her desire to gain a procedural

/////

5

1  advantage by returning to state court, rather than any desire to reach a result on the merits.  (*Id.*)

2  (quoting *Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1088 (C.D. Cal. 1999)).

3        Pursuant to 28 U.S.C. § 1447(e), "[i]f after removal the plaintiff seeks to join additional

4  defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder,

5  or permit joinder and remand the action to the State court."  *Id.*  Moreover, even though plaintiff

6  here has already filed her FAC, under 28 U.S.C. § 1447(e), the court may still consider whether it

7  should exercise its discretion to allow plaintiff to amend her complaint to add defendant Robinson

8  as a diversity-destroying defendant.  *See Clinco*, 41 F. Supp. 2d at 1087 (noting that "when a

9  party attempts to amend a complaint in a manner that destroys a federal court's jurisdiction,

10  § 1447(e) gives the court discretion to consider the propriety and fairness of allowing that

11  amendment"); *see also McGrath v. Home Depot USA, Inc.*, 298 F.R.D. 601, 607 (S.D. Cal. 2014)

12  ("[T]he majority of district courts in the Ninth Circuit addressing the specific situation of a

13  plaintiff attempting to use a Rule 15(a) amendment 'as a matter of course' to destroy diversity

14  jurisdiction by adding claims against a non-diverse defendant have scrutinized the plaintiff's

15  purposes for amendment under § 1447(e).").  Thus, even if plaintiff were permitted under Rule 15

16  to amend her complaint as of right, "when a party attempts to amend a complaint in a manner that

17  destroys a federal court's jurisdiction, [28 U.S.C.] § 1447(e) gives the court discretion to consider

18  the propriety and fairness of allowing that amendment."  *Clinco*, 41 F. Supp. 2d at 1087; *see also*

19  *Mayes v. Rapoport*, 198 F.3d 457, 462 n.11 (4th Cir. 1999) ("[A] district court has the authority to

20  reject a post-removal joinder that implicates 28 U.S.C. § 1447(e), even if the joinder was without

21  leave of court.").

22        When determining whether joinder should be permitted or denied, district courts have

23  considered the following factors:

24          1.  Whether the party sought to be joined is needed for just
adjudication and would be joined under Federal Rule of Civil

25              Procedure 19(a);

26          2.  Whether the statute of limitations would prevent the filing of a
new action against the new defendant should the court deny

27              joinder;

28          3.  Whether there has been unexplained delay in seeking the joinder;

4.   Whether the joinder is solely for the purpose of defeating federal jurisdiction;

5.   Whether the claim against the new party appears to be valid;

6.   The possible prejudice that may result to any of the parties in the litigation.

*Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1278 (C.D. Cal. 2015) (joinder denied under § 1447(e), in part because the claims proposed to be brought against the non-diverse defendant appeared to be invalid).  Any of these factors may be determinative, and none is absolutely necessary for joinder.  *Graunstadt v. USS-Posco Indus.*, No. 3:10-cv-03225-SI, 2010 WL 3910145, at *2 (N.D. Cal. Oct. 5, 2010).  The court will consider each of these factors in turn below.

      1.    Just Adjudication

Under the first factor, courts consider "whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a)."  *IBC Aviations Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de CV*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000).  Rule 19 "requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests or would subject any of the parties to the danger of inconsistent obligations."  *Id.*; *see also Chan v. Bucephalus Alt. Energy Grp., LLC*, No. 08-cv-04537-JW, 2009 WL 1108744, at *3 (N.D. Cal. Apr. 24, 2009) ("A proper party for joinder under Rule 19(a) is one having an interest in the controversy, and who ought to be made a party, in order that the court may act on that rule which requires it to decide and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it.") (internal quotation marks omitted).  A party is necessary for a just adjudication if either (1) his interests are such that in his absence complete relief cannot be afforded among the existing parties or (2) his absence exposes any of the existing parties to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.  *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999).

Here, defendant Robinson's presence in this action is not necessary in order to reach a just adjudication, nor is joinder required under Rule 19.  Plaintiff seeks only monetary relief and does

7

1   not challenge defendant Nutrien's assertion that it would be able to fully satisfy any judgment

2   rendered in plaintiff's favor. *See Bird v. Wells Fargo Bank, N.A.*, No. 1:16-cv-01130-DAD-EPG,

3   2017 WL 2797854, at \*3 (E.D. Cal. June 28, 2017) (finding that the plaintiff could obtain

4   complete relief because the already named defendant could satisfy any judgment rendered in

5   plaintiff's favor). It therefore appears that plaintiff could obtain complete relief from Nutrien

6   with respect to all of her claims, even absent the addition of defendant Robinson. Plaintiff makes

7   no argument to the contrary. Indeed, plaintiff's allegations against defendant Robinson are brief

8   and duplicative. Her allegations provide no basis for recovery against defendant Robinson

9   separate and apart from the relief sought against defendant Nutrien. *See McGrath*, 298 F.R.D. at

10  608. Any liability stemming from defendant Robinson's actions as an employee in the scope of

11  his employment—as alleged by plaintiff here—are imputed to his employer under the doctrine of

12  *respondeat superior. Calderon v. Lowe's Home Centers, LLC*, No. 2:15-cv-01140-ODW, 2015

13  WL 3889289 (C.D. Cal. June 24, 2015). Moreover, while plaintiff avers that she would have to

14  bring a separate state action against defendant Robinson if he were not joined in this action (Doc.

15  No. 22 at 3), plaintiff does not persuasively argue that a new state court action would be

16  necessary. Accordingly, consideration of the "just adjudication" factor weighs against allowing

17  plaintiff to amend her complaint in order to add defendant Robinson.

18      2.    <u>Statute of Limitations</u>

19      "Generally, if a statute of limitations does not bar a plaintiff from filing suit in state court,

20  a federal court may be less inclined to permit joinder of a non-diverse defendant because he could

21  still theoretically seek relief from state court." *Vasquez v. Wells Fargo Bank, N.A.*, 77 F. Supp.

22  3d 911, 922 (N.D. Cal. 2015) (citation omitted).

23      Here, the parties appear to agree that the statute of limitations applicable to plaintiff's

24  common law negligence claim is three years because it involves allegations of property damage.

25  (Doc. Nos. 21 at 7; 22 at 4); *see also* Cal. Civ. Proc. Code § 338 (providing a 3-year statute of

26  limitations for property damage claims). The damage alleged in the FAC occurred in the spring

27  of 2021, and thus the limitations period has not yet run on plaintiff's negligence claim.

28  Accordingly, plaintiff has not persuasively argued that the statute of limitations would prevent her

from asserting a negligence claim defendant Robinson in state court.  Consideration of this factor therefore also weighs against allowing joinder and amendment.  *See Davis v. Tower Select Ins. Co., Inc.*, No. 2:12-cv-1593-KJM-CKD, 2013 WL 127724, at *2 (E.D. Cal. Jan. 9, 2013).

### 3.   Delay in Seeking Joinder

To evaluate the timeliness factor, a court must do more than merely determine whether a motion to amend was filed within the period of time allowed by the scheduling order in a case. *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006).  Instead, courts must consider whether the "moving party knew or should have known the facts and theories raised by the amendment in the original pleading."  *Id.* (quoting *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990)).

Defendants argue that plaintiff identified defendant Robinson repeatedly by name in her original state court complaint, "thereby clearly demonstrating knowledge of his identity at that time," and yet plaintiff did not add him as a defendant until after this case had been removed to this federal court.  (Doc. No. 21 at 7.)  In response, plaintiff contends that she conducted further investigations into her dispute with Nutrien after it moved to dismiss her initial complaint on October 13, 2021, and those "investigations led to discovering Robinson's high level of involvement in this matter . . . ."  (Doc. No. 22 at 3.)

Plaintiff has simply not persuasively argued that she did not know of the basis for any potential claim against defendant Robinson until she filed her FAC on October 27, 2021.  Indeed, the facts applicable to defendant Robinson alleged in plaintiff's original complaint are nearly identical to those now alleged in her FAC.  Accordingly, the court concludes that plaintiff knew or should have known the facts supporting the bringing of a claim against defendant Robinson at the time she filed her initial complaint.  Consideration of this factor therefore also weighs against allowing joinder at this time.

### 4.   Motive for Joinder

Under the motive for joinder factor, the court considers "whether joinder is intended solely to defeat federal jurisdiction."  *IBC Aviation*, 125 F. Supp. 2d at 1011.  "There is no clear standard for determining whether a plaintiff has improper motives in seeking to add a party that

9

will force the court to remand the case, but unjustified delay in filing a motion to amend is a reason to suspect the plaintiff wishes to defeat federal jurisdiction." *Davis*, 2013 WL 127724, at *3 (citing *Bakshi v. Bayer Healthcare, LLC*, No. 07-cv-00881-CW, 2007 WL 1232049, at *5 (N.D. Cal. Apr. 26, 2007) ("Because Plaintiff has no valid reason for failing to include [proposed defendant] in his original complaint, the Court finds that the primary reason for seeking to add [proposed defendant] now is to destroy the Court's diversity jurisdiction.")).  "Courts routinely exercise their discretion to deny joinder when it appears that the plaintiff's sole motivation for joining a defendant is to defeat diversity jurisdiction and avoid resolution of the case in federal court." *Munoz v. Walmart Inc.*, No. 2:19-cv-08333-ODW-JPR, 2020 WL 91499, at *2 (C.D. Cal. Jan. 8, 2020); *see also Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1376 (9th Cir. 1980) (concluding that a trial court "should look with particular care at such motive in removal cases, when the presence of a new defendant will defeat the court's diversity jurisdiction and require a remand to the state court").  Courts consider a handful of factors when addressing a plaintiff's motivations for seeking to add a non-diverse defendant.

First, in evaluating motive, courts have considered whether the plaintiff was "aware of the removal" at the time the plaintiff amended her complaint. *Clinco*, 41 F. Supp. 2d at 1083; *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1024 (C.D. Cal. 2002) (noting that plaintiff was aware of removal at the time that plaintiff filed its FAC, and was aware that the basis for removal was diversity jurisdiction).  Here, because plaintiff filed her FAC several weeks after defendant Nutrien removed this case on the basis of diversity jurisdiction, plaintiff was undoubtedly "aware of the removal" at the time that she amended her complaint and that defendant Nutrien asserted diversity jurisdiction as the basis for removal.  *See Boon*, 229 F. Supp. 2d at 1024.

Second, in considering motive for joinder, "courts have inferred an improper motive where the plaintiff's proposed amended complaint contained only minor or insignificant changes to the original complaint." *Forward-Rossi v. Jaguar Land Rover N. Am., LLC*, 2:16-cv-00949-CAS-KS, 2016 WL 3396925, at *4 (C.D. Cal. June 13, 2016).  In other words, where "the original and first amended complaints are substantially similar." *Clinco*, 41 F. Supp. 2d at 1083.  Here, the only notable changes in comparing plaintiff's original complaint to the FAC are that

1    plaintiff now alleges:  (1) that Robinson should have known that plaintiff would use the chemicals

2    on alfalfa because it was obvious and apparent alfalfa was being grown when Robinson first

3    visited plaintiff's property; (2) the specific text messages that were exchanged between herself

4    and Robinson; and (3) that when she later met with Robinson, he stated, "Oh shit, I screwed up.  I

5    sent you Saber instead of Butyrac."  (*See generally* FAC ¶¶ 7–16.)  Otherwise, plaintiff's FAC

6    contains the same factual allegations as her original complaint.  Moreover, plaintiff's FAC asserts

7    the same single negligence claim against both defendants without differentiating between them.

8    (*Id.* at 4–5.)  Thus, because the two "complaints are substantially similar," and the FAC contains

9    only "minor" changes from the original complaint, the court may infer an improper motive on the

10   part of plaintiff.  *Clinco*, 41 F. Supp. 2d at 1083; *Forward-Rossi*, 2016 WL 3396925, at *4.

11         Third, courts evaluating a plaintiff's motive for joinder have considered whether a

12   plaintiff has provided an explanation for why the plaintiff waited to assert claims against the non-

13   diverse defendant.  *See Chan*, 2009 WL 1108744, at *5 (finding a proper motive for joinder

14   where the plaintiff "amended her Complaint only after discovering that [the non-diverse

15   defendant] was no longer associated with [the diverse defendant]").  Here, plaintiff "has not

16   explained why [she] waited to bring claims against [Robinson] until after this action was

17   removed."  *Murphy*, 74 F. Supp. 3d at 1284.  Indeed, none of the factual allegations asserted

18   against defendant Robinson appear to have been in the exclusive control of defendants or

19   otherwise unknown to plaintiff at the time of the filing of her original complaint.  "In light of this,

20   one could justifiably suspect that [plaintiff's] amendment of the complaint was caused by the

21   removal rather than an evolution of [her] case."  *Clinco*, 41 F. Supp. 2d at 1083.

22         Fourth, "[t]he question of a plaintiff's intentions is 'intertwined' with the validity of the

23   proposed claims."  *Eguilos v. Volkswagen Grp. of Am., Inc.*, No. 2:22-cv-00614-KJM-KJN, 2022

24   WL 2713273, at *4 (E.D. Cal. July 13, 2022) (citing *Reyes v. FCA US LLC*, No. 1:20-cv-00833-

25   DAD-SKO, 2020 WL 7224286, at *6 (E.D. Cal. Dec. 8, 2020)).  As already discussed, defendant

26   Robinson's actions are imputed to his employer, defendant Nutrien, because he was acting as an

27   agent of Nutrien, and thus plaintiff would likely not have a valid claim against defendant

28   Robinson as an individual.  *Calderon*, 2015 WL 3889289, at *5; *see also McGrath*, 298 F.R.D. at

1   608 (finding that claims against individuals were not valid in light of the fact that the complaint

2   contained "no allegations of actions by the individual Defendants outside the scope of their

3   employment").

4          Overall, the circumstances here strongly suggest that plaintiff's sole motivation in adding

5   Robinson as a named defendant in this action is to defeat federal subject matter jurisdiction.  *See*

6   *Eguilos*, 2022 WL 2713273, at *5.  For all of these reasons, consideration of this factor does not

7   support joinder.

8          5.      Validity of Claims

9          Under the fifth factor, the court considers "whether a new claim sought to be added seems

10  to have merit."  *Clinco*, 41 F. Supp. 2d at 1083.  Here, as noted above, the negligence cause of

11  action alleged against defendant Robinson is identical to that alleged against defendant Nutrien.

12  (*See* FAC at 4.)  For the reasons explained below in addressing defendants' pending motion to

13  dismiss, the court concludes that plaintiff's allegations are sufficient to state her negligence claim

14  against defendant Nutrien.  It follows that plaintiff's negligence claim as asserted against

15  defendant Robinson would likely be cognizable as well, except that defendant Robinson was

16  acting as an employee and thus cannot be held individually liable.  *See Mercado v. Allstate Ins.*

17  *Co.*, 340 F.3d 824, 826 (9th Cir. 2003) ("It is well established that, unless an agent or employee

18  acts as a dual agent, she cannot be held individually liable as a defendant unless she acts for her

19  own personal advantage."); *see also Calderon*, 2015 WL 3889289, at *5.  Thus, consideration of

20  this factor also weighs against joinder.

21         6.      Prejudice

22         Finally, the last relevant factor courts consider is whether plaintiff will "suffer undue

23  prejudice if the Court chooses not to exercise its discretion to allow joinder."  *Boon*, 229 F. Supp.

24  2d at 1025.  In this context, prejudice to a plaintiff "exists if the proposed defendant is crucial to

25  the case" and "does not exist if complete relief can be afforded without that defendant."  *McCarty*

26  *v. Johnson & Johnson*, No. 1:10-cv-00350-OWW-DLB, 2010 WL 2629913, *9 (E.D. Cal. June

27  29, 2010); *see also Vasquez*, 77 F. Supp. 3d at 923 (finding no prejudice in denying the joinder of

28  Wells Fargo as a defendant because the plaintiff had not stated a viable claim against that entity).

12

1    The court concludes that plaintiff will not suffer prejudice here if joinder of defendant

2    Robinson is not allowed.  As explained above, pursuant to the doctrine of *respondeat superior*,

3    plaintiff could receive complete recovery from defendant Nutrien for any of defendant

4    Robinson's alleged actions.  Consequently, consideration of this factor weighs against joinder.

5         7.    Balancing of the Factors

6    Having considered the § 1447(e) discretionary factors, the court concludes that they do

7    not support allowing joinder of non-diverse defendant Robinson.  As other courts have

8    recognized, "[m]ost significant are the findings that none of the asserted claims against [the non-

9    diverse defendant] appear valid and that the apparent reason for the proposed joinder is to add a

10   party whose presence would defeat diversity jurisdiction."  *Murphy*, 74 F. Supp. 3d at 1286.

11   Therefore, the court will exercise its discretion under § 1447(e) to not permit plaintiff to amend

12   her complaint to join Robinson as a defendant.

13   Accordingly, "[c]onstruing [plaintiff's] filing of the [FAC] as a motion for leave to

14   amend, the Court denies the motion without prejudice" and will dismiss defendant Robinson from

15   this action.  *Clinco*, 41 F. Supp. 2d at 1088.  As a result, there is now (again) complete diversity

16   between the parties, and the court therefore will deny plaintiff's motion to remand this action to

17   state court.

18   Having determined that this action should remain in this federal court, the undersigned

19   next turns to defendants' pending motion to dismiss.[2]

20   **B.    Defendants' Motion to Dismiss**

21   In their motion to dismiss plaintiff's complaint, defendants advance five arguments.  First,

22   defendants argue that "the factual allegations in the [FAC] are insufficient to establish the

23   existence of any common law duty of care owed by Defendants in relation to the cultivation of

24   [plaintiff's] crop and her application of Saber."  (Doc. No. 15 at 3.)  Second, defendants argue

25   that plaintiff's amended complaint "fails to establish that the loss claimed was a foreseeable

26

27   _____

     [2]  Although defendant Robinson will be dismissed from this action, the court continues to use the
28   plural of "defendants" in referring to the pending motion to dismiss for the sake of clarity, as that
     motion was brought by both defendant Nutrien and defendant Robinson.

13

1   consequence of any conduct allegedly performed by Defendants." (*Id.*)  Third, defendants argue

2   that plaintiff has admitted in her FAC that damages to her crop were caused by her own use and

3   application of Saber, "all contrary to its explicit label," which precludes a "finding that any

4   ostensibly negligent conduct by Defendants could have caused her damages." (*Id.*)  Fourth,

5   defendants argue that the economic loss doctrine bars plaintiff's claims.  (*Id.*)  Fifth, and finally,

6   defendants argue that § 12855 of the California Food and Agricultural Code bars plaintiff's claim.

7   (*Id.*)  The court will address each of these arguments in turn.

8           1.      Duty

9           Under California common law, a negligence claim contains four basic elements:  (1) a

10  legal duty to use care; (2) a breach of that legal duty; (3) causation; and (4) damages.  *Kesner v.*

11  *Superior Ct.*, 1 Cal. 5th 1132, 1142 (2016).  Defendants argue that plaintiff's claim should be

12  dismissed because they did not owe plaintiff a legal duty.  (Doc. No. 15 at 7.)

13          "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to

14  establishing a claim for negligence."  *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d

15  1089, 1095 (1991).  "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant."

16  *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 481 (1996).

17  "The existence of a legal duty to use reasonable care in a particular factual situation is a question

18  of law for the court to decide."  *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278

19  (2004).  "[D]uty differs from the other elements of a tort."  *Shipp v. Western Eng'g, Inc.*, 55 Cal.

20  App. 5th 476, 490 (2020).  "Breach, injury, and causation must be demonstrated on the basis of

21  facts adduced at trial, and a jury's determination of each must take into account the particular

22  context in which any act or injury occurred.  Analysis of duty occurs at a higher level of

23  generality."  *Id.*

24          Here, in her FAC plaintiff alleges that defendants owed her a duty to provide "the correct

25  products to be applied to [p]laintiff's crop based upon [d]efendants' knowledge of those crop."

26  (Doc. No. 11 at ¶ 18.)  Moreover, plaintiff has alleged that defendants had a duty to use

27  "reasonable care in selecting and/or substituting products sold to [p]laintiff that [d]efendant[s]

28  knew or should have known were intended for use on [p]laintiff's Alfalfa Crop."  (*Id.*)  According

to plaintiff, at all times relevant, defendants knew, or should have known, that "any failure by them, whether by mistake or negligence, in performing the services relating to providing [p]laintiff with correct recommendations and products would result in direct harm to [p]laintiff." (*Id.* at ¶ 20.)  Plaintiff alleges that Robinson knew that any purchased products would be used on an alfalfa crop because "it was obvious and apparent that alfalfa was being grown" on her property, both when Robinson initially solicited her business and when he later drove by and observed plaintiff's employees working on the property.  (*Id.* at ¶¶ 7–8.)

The court finds plaintiff's arguments to be persuasive.  Based on the allegations in her FAC, plaintiff placed an order for "Butyrac 200," which had been recommended to her for use on her alfalfa crop.  (*Id.* at ¶ 12.)  Once that order was placed, defendants had a duty to ensure that the product (as ordered) was delivered to plaintiff.  In the context of selling chemical products for use in commercial agriculture, a seller delivering a different product that contains chemicals other than those contained in the product the buyer ordered poses a risk of harm to the buyer in using that product on their crop.  Regardless of defendants' knowledge as to what specific crop plaintiff was growing, providing a different product than what plaintiff ordered could foreseeably lead to damages.  The law of negligence imposes a duty to use ordinary care to avoid damage to the person or property of another.  *Adams*, 2010 WL 1248286, at *3 (finding that defendant's negligence "damaged the growers' crops, their property.").  Such a duty was owed here.  Plaintiff has adequately alleged that defendants possessed a legal duty to exercise care in delivering products *as ordered* to avoid delivering different products that may contain chemicals harmful to plaintiff's crop.  *See, e.g.*, *Adams v. United States*, No. 03-cv-0049-E-BLW, 2010 WL 1248286, at *3 (D. Idaho Mar. 24, 2010) ("While the law of negligence would impose on the seed seller a duty to avoid harm to person or property, it does not impose a duty to produce seed that allows the purchaser to make a profit.").

2.      Foreseeable Consequence

Defendants next argue that the harm alleged in plaintiff's FAC was not a foreseeable consequence of the actions plaintiff alleges defendants took.  (Doc. No. 15 at 3.)  In the context of evaluating a negligence claim, foreseeability requires a "focused, fact-specific" inquiry that takes

15

1   into account a particular plaintiff's injuries and the particular defendant's conduct.  *Laabs v. S.*

2   *Cal. Edison Co.*, 175 Cal. App. 4th 1260, 1273 (2009) (quoting *Ballard v. Uribe*, 41 Cal. 3d 564,

3   572–73, n.6 (1986)).

4          Defendants argue that "[t]he confused misapplication of an agricultural product in total

5   disregard of its explicitly different label name and expressly divergent labeling instructions is not

6   a plausibly foreseeable consequence of the conduct [plaintiff] alleges to have been performed by

7   [d]efendants."  (Doc. No. 15 at 10.)  According to defendants, plaintiff's FAC "fails to make any

8   allegation whatsoever that any representation by Robinson or Nutrien contained in their minimal

9   communications was substantively false or inaccurate."  (*Id.*)  Defendants contend that all

10  plaintiff has alleged is that Robinson responded to a text request for general pricing and

11  availability of various chemicals "by providing the correct price for 'Saber (butyrate)'—Saber

12  that was subsequently delivered to Plaintiff at that price."  (*Id.*)  Defendants suggest that it was

13  plaintiff who construed Saber and Butyrac 200 as being interchangeable and that it was plaintiff

14  who applied the Saber to her alfalfa, even though the product was not labeled as Butyrac 200 and

15  has a federally approved label that "lists alfalfa as a plant species which may be 'controlled'" by

16  Saber, i.e., "killed by its application."  (*Id.*)  Defendants conclude that "providing a customer with

17  factually accurate price and stock information in response to an inquiry is not an 'activi[ty] from

18  which [the] harm [alleged in the FAC] might reasonable be anticipated.'"  (*Id.* at 11) (quoting

19  *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1146 (E.D. Cal. 2013)).

20         In advancing this argument, however, defendants have left out (or at least misconstrued)

21  some of the key factual allegations of plaintiff's FAC.  For example, although plaintiff has

22  alleged that Robinson listed Saber (butyrate) in his price quote to her, she also has clearly alleged

23  that in response to that quote, she requested 15 gallons of *Butyrac*—never mentioning Saber in

24  her order.  (*See* FAC at 3–4.)  Thus, while defendants argue that plaintiff's damages were a

25  product of her own confusion, in fact plaintiff has alleged that *defendants* were the confused

26  party.  Put simply, plaintiff has alleged that defendants negligently shipped the wrong chemical to

27  her because they negligently misread her actual order.  It is only natural that plaintiff—in relying

28  on defendant Robinson's qualifications as a crop advisor—would assume that Robinson had

16

delivered what she ordered.  Therefore, plaintiff's use of the Saber is a foreseeable consequence of defendants' alleged mistakes.  Moreover, although defendants contend that the Saber had a label listing alfalfa as a plant that may be "controlled" by Saber, an ordinary consumer may not understand "control" to mean "kill."  Indeed, controlled could just as easily mean "regulated" and refer to how a chemical protects a crop from natural forces such as pests.  In any event, the court does not find defendants' arguments as to the purported lack of foreseeable consequence under these circumstances to be persuasive.  A foreseeable consequence of an errantly delivered chemical that in fact kills, rather than protects, alfalfa crops is the destruction of those crops.  Accordingly, plaintiff has adequately alleged that her damages were a natural and foreseeable consequence of defendants' alleged breach of duty.

   3.   <u>Proximate Cause</u>

   Under California law, proximate causation is a necessary element of a claim for negligence.  *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008).  "Proximate cause, or legal cause, is absent where an intervening act or event breaks the chain of causation between the defendant's conduct and the plaintiff's injuries as a matter of law."  *Walsh v. Tehachapi Unified Sch. Dist.*, 997 F. Supp. 2d 1071, 1078 (9th Cir. 2014).  "Generally, an act is an intervening cause where it is unforeseeable or extraordinary."  *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009).

   In their pending motion to dismiss, defendants argue that plaintiff has not alleged a "natural and continuous sequence, unbroken by any efficient intervening cause" between her text messages with Robinson and the damage to her crop.  (Doc. No. 15 at 11.)  Defendants contend that it was plaintiff herself who applied Saber to her alfalfa in a manner that "utterly failed to comply with product labeling instructions."  (*Id.* at 12.)  Defendants advance that such an intervening and superseding error "inescapably destroys all causation that could be attributable to Nutrien or Robinson."  (*Id.*)  Defendants cite 40 C.F.R. § 156.10(i)(2)(ii) for the premise that "it is a violation of Federal law to use [Saber] in a manner inconsistent with its labeling," which defendants aver is exactly what plaintiff did by ignoring the warning label on the Saber and applying the chemical to her alfalfa crop.  (*Id.*)

17

Here too, the court finds defendants' argument to be unpersuasive.  Notably, defendants cite no authority supporting their contention that plaintiff's apparent failure to heed the Saber warning label would qualify as an intervening event.  Instead, defendants only cite to the decision in *Alfano v. BRP Inc.*, No. 2:08-cv-1704-JAM-DAD, 2010 WL 2292265, *2 (E.D. Cal. June 4, 2010), in which the district court granted summary judgment on a failure to warn claim where a manufacturer showed that the plaintiff had not read the warning label, and nothing prevented her from doing so.  (Doc. No. 23 at 5.)  But unlike the plaintiff in *Alfano*, here plaintiff does not seek to prove "through affirmative evidence that the inadequate warning was the proximate cause of her injuries."  *Id.*  In other words, plaintiff has not alleged that the warning on the Saber chemicals is the cause of her damages.  Moreover, plaintiff has not alleged any claims against the manufacturer of Saber.  Rather, plaintiff seeks to hold defendants liable for delivering to her a chemical that she did not order (Saber) and that, through their actions, was misrepresented to be the chemical that she had in fact ordered (Butyrac 200).  Thus, the *Alfano* decision does not strike the court as particularly relevant to resolution of the pending motion.

Nevertheless, even assuming that the decision in *Alfano* was applicable here, the Saber warning label is distinguishable from the label at issue in that case.  Defendants have attached the Saber label to their motion to dismiss and request judicial notice of the warning.[3]  (Doc. No. 16-1.)  While the 22-page warning label does contain some notices regarding alfalfa, those notices certainly remain open to interpretation.  By way of example, on page 19, the warning label states that alfalfa can be "controlled" by Saber, but even that section contains an asterisk and states that alfalfa would only be "partially controlled."  (*Id.* at 19.)  The court cannot conclude at the motion to dismiss stage of this litigation that plaintiff's apparent failure to closely read and research the

---

[3]  Federal Rule of Evidence 201 permits courts to take judicial notice of an adjudicative fact if that fact "is not subject to reasonable dispute" because it can be accurately and readily determined from sources whose accuracy cannot reasonable be questioned."  Fed. R. Evid. 201(b).  Here, the Saber label can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned because it is a true and correct copy of the federally-approved product label for Saber.  (*See* Doc. No. 16 at 2); *see also* Fed. R. Evid. 902(10).  Plaintiff does not dispute this fact.  Accordingly, the court takes judicial notice of the product label for Saber, submitted as "Exhibit A" by defendants.  (Doc. No. 16-1.)

1   Saber label should qualify as an intervening event that forecloses the proximate cause of

2   defendants' alleged negligence.  In her opposition to defendants' motion to dismiss, plaintiff

3   points to her allegation that "the only reason she applied Saber to the alfalfa crop was because of

4   Robinson's statements and representations, as well as being delivered Saber by Nutrien."  (Doc.

5   No. 20 at 7.)  Based on this alone, the court concludes that plaintiff has adequately alleged

6   proximate cause with respect to her negligence claim.

7           4.      Economic Loss Doctrine

8           Defendants also argue that the economic loss doctrine should bar plaintiff from recovery.

9   (Doc. No. 15 at 12.)  Generally, purely economic losses are not recoverable in tort.  *S.M. Wilson*

10  *& Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1376 (9th Cir. 1978); *Seely v. White Motor Co.*, 63 Cal.

11  2d 9, 16–17 (1965).  "[T]he economic loss rule 'prevent[s] the law of contract and the law of tort

12  from dissolving one into the other.'"  *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979,

13  988 (2004) (citation omitted).  Nonetheless, a plaintiff can recover in tort after a contract breach

14  in three situations.  First, when a "product defect causes damage to 'other property, that is,

15  property other than the product itself."  *Jimenez v. Superior Court*, 29 Cal. 4th 473, 483 (2002)

16  (emphasis omitted).  Second, when a defendant breaches a legal duty independent of the contract,

17  irrespective of whether damages are economic.  *Robinson*, 34 Cal. 4th at 989.  Third, if a "special

18  relationship" exists between the parties, a party can still recover when the economic loss rule

19  would otherwise apply.  *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979).

20          "Economic loss . . . has been defined as the diminution in value of the product because it

21  is inferior in quality and does not work for the general purposes for which it was manufactured

22  and sold."  *S.F. Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, n.5 (1995).

23  "Economic loss generally means pecuniary damage that occurs through loss of value or use of the

24  goods sold or the cost of repair together with consequential lost profits *when there has been no*

25  *claim of personal injury or damage to other property.*"  *MDU Res. Grp. v. W.R. Grace & Co.*, 14

26  F.3d 1274, 1279 (8th Cir. 1994).

27          The court concludes that the economic loss rule does not preclude plaintiff's negligence

28  claim here because plaintiff has sufficiently alleged damage to "other property."  The product at

19

1    issue here—for the purposes of an economic loss analysis—is the chemicals supplied by

2    defendants to plaintiff.  Because plaintiff has sufficiently alleged damage to property other than

3    the provided chemicals, the economic loss rule does not apply.  *See NuCal Foods, Inc. v. Quality*

4    *Egg LLC*, 918 F. Supp. 2d 1023, 1029 (E.D. Cal. 2013) ("If plaintiff has sufficiently alleged

5    damage to property other than Quality Egg's eggs, then the economic loss rule does not apply.").

6         Defendants cite a series of decisions from outside of the Ninth Circuit that generally hold

7    that the economic loss doctrine bars tort claims arising from crop damage.  (*See* Doc. No. 15 at

8    13.)  Notably, however, all of those cases involve situations where an herbicide did not work as

9    effectively as expected.  *See, e.g.*, *Maynard Co-Op Co. v. Zeneca, Inc.*, 143 F.3d 1099 (8th Cir.

10   1998); *Bailey Farms, Inc. v. Nor-Am Chemical Co.*, 27 F.3d 188 (6th Cir. 1994); *DJ Coleman,*

11   *Inc. v. Nufarm Americas, Inc.*, 693 F. Supp. 2d 1055 (D.N.D. 2010); *Gooch v. E.I. Du Pont de*

12   *Nemours & Co.*, 40 F. Supp. 2d 863 (W.D. Ky. 1999); *Friedlein v. E.I. Du Pont de Nemours &*

13   *Co.*, 68 F. Supp. 2d 1061 (N.D. Iowa 1999).  Here, the issue is not that plaintiff purchased an

14   ineffective herbicide.  Rather, plaintiff alleges in her FAC that defendants sold her an entirely

15   different product than that which she had ordered.  As a blunt analogy, if a fire department

16   purchased a hose and was instead given a flamethrower, surely the inevitable destruction of

17   property that occurs would qualify as being to "other property" and the seller would not be liable

18   solely for the cost difference between a hose and the flamethrower.  In short, the "other property"

19   exception to the economic loss rule applies to property damages beyond the scope of the

20   underlying transaction.  Had plaintiff intentionally requested to purchase Saber, the analysis

21   might well be different.  However, as in *NuCal Foods*, here the damages to plaintiff's alfalfa field

22   from a product she *did not order* fall "beyond the contemplation of the parties in their contractual

23   bargain" and thus fall outside the scope of the economic loss rule.  *NuCal Foods, Inc.*, 918 F.

24   Supp. 2d at 1029.

25         Accordingly, the court concludes that the economic loss doctrine does not preclude

26   plaintiff from seeking recovery for the alleged destruction of her alfalfa crop.

27   /////

28   /////

5.     California Food & Agricultural Code § 12855

California Food & Agricultural Code § 12855 states that a

> registrant is not liable for any injury or damage that is suffered solely
> by reason of any of the following:
>
> (a) The use of the pesticide for a purpose that is not indicated by the
> label.
>
> (b) The use of the pesticide contrary to the printed directions of the
> registrant or seller.
>
> (c) The breach of any warranty by the registrant that is not expressly
> printed on the label

Cal. Food & Agric. Code § 12855.  In their pending motion to dismiss, defendants argue that

plaintiff's FAC reveals that she "used Saber in contravention of the label" because the label

"makes clear that Saber kills alfalfa."  (Do. No. 15 at 14.)  Defendants therefore conclude that

plaintiff's negligence claim is foreclosed by § 12855(b), which bars damages against a

"registrant" when a plaintiff uses a pesticide contrary to the printed directions of the registrant's

label.  (*Id.*)

The court does not find defendants' argument to be persuasive at the motion to dismiss

stage of the litigation.  Pursuant to California Food & Agricultural Code § 12851, a registrant

must attach to each container or package of pesticide to be sold a plainly printed label identifying

the pesticide and the registered manufacturer, importer, or vendor.  As an initial matter,

"registrant" is defined as "a person that has registered a pesticide and has obtained a certificate of

registration from the department."  Cal. Food & Agric. Code § 12855.  "Every manufacturer of,

importer of, or dealer in any pesticide" must obtain such a registration.  *Id.* at § 12811.

Defendants have asserted in conclusory fashion that "Nutrient is a registrant under this

definition."  (Doc. No. 15 at 14 n.7.)  Notably, however, California Food & Agricultural Code §

12811 states that "a dealer or agent that sells any pesticide that has been registered by the

manufacturer" does *not* qualify as a registrant.  *See* Cal. Food & Ag. Code § 12811.  Defendants

have not clearly explained how Nutrien would qualify as a registrant under this statutory scheme,

given that Nutrien appears to be a dealer or agent selling Saber and thus would appear to fall into

/////

1  this latter category of non-registrants.  Thus, it is not clear that the exception to liability afforded

2  by § 12855 applies to defendants here.

3       Moreover, even if plaintiff did misuse the Saber in a manner contrary to its label

4  instructions, "the exemption from liability under section 12855 is available to the manufacturer of

5  a registered economic poison *only* where the injury or damage suffered by a plaintiff resulted

6  *solely* by reason of the enumerated events.  The key word in the statute is obviously the word

7  'solely.'"  *John Norton Farms, Inc. v. Todagco*, 124 Cal. App. 3d 149, 174 (1981).  As noted

8  above, in her FAC plaintiff alleges that she used the Saber chemicals on her alfalfa crop based on

9  defendants' representations and because defendants sent her Saber instead of the Butyrac 200 that

10 she had ordered.  Although plaintiff may have avoided her damages had she read the Saber label

11 closely and made an independent decision not to apply the Saber despite defendants' supplying

12 her with that product for that purpose, the court cannot conclude based on the allegations of

13 plaintiff's FAC that any failure to heed the label's warnings "solely" caused her harm and

14 damages.  At best, such factual determinations remain open-ended questions that are better suited

15 for analysis and resolution on summary judgment or at trial, after discovery has taken place in this

16 case.

17       Lastly, in her opposition to the pending motion to dismiss, plaintiff argues that § 12855 is

18 an affirmative defense and thus inappropriately raised by way of a Rule 12(b)(6) motion.  (Doc.

19 No. 20 at 8.)  In their reply, defendants do not appear to dispute that they are raising an

20 affirmative defense, but they nonetheless contend that courts "have discretion to dismiss claims at

21 the motion to dismiss stage on the basis of an affirmative defense."  (Doc. No. 23 at 6.)

22 Ordinarily, an affirmative defense may not be raised by way of a motion to dismiss.  *Scott v.

23 Kuhlman*, 746 F.2d 1377, 1378 (9th Cir. 1984).  However, an affirmative defense may be

24 considered if the defense is based on undisputed facts or if the basis for the argument appears on

25 the face of the complaint and any material judicially noticed.  *See id.*; *Hernandez v. Sutter W.

26 Capital*, No. 09-cv-03658-CRB, 2010 WL 3385046, at *3 (N.D. Cal. Aug. 26, 2010) (granting a

27 motion to dismiss on statute of limitations grounds based on judicially noticed dates).  The court

28 recognizes that the basis of defendants' affirmative defense rests on their request that the court

22

take judicial notice of the Saber product label.  Nevertheless, disputed facts remain as to whether plaintiff actually failed to read the label, whether that purported failure would be the sole cause of her damages, and whether §§ 12855 and 12811 even apply to defendant Nutrien.  Accordingly, the court concludes that it would be premature to grant defendants' motion to dismiss on the basis of § 12855 at the motion to dismiss stage of this litigation.

**CONCLUSION**

For the reasons set forth above,

1.      Plaintiff's motion to remand (Doc. No. 19) is denied;

2.      Defendants' motion to dismiss (Doc. No. 14) is denied;

3.      Defendant R. Daniel Robinson is terminated as a defendant from this action and the Clerk of the Court is directed to update the docket accordingly; and

4.      This case remains set for an Initial Scheduling Conference on September 1, 2022 at 9:30 a.m. before the assigned Magistrate Judge.  (Doc. No. 24.)

IT IS SO ORDERED.

Dated:   **August 5, 2022**                        _____

UNITED STATES DISTRICT JUDGE

23